And who you represent. Please call the case. 11-1136 Pekin Insurance Company. Tovar Snow Professionals. So for the epiline. Good morning, Your Honors. Peter Sergelis with me. Robert Mark Chummers at counsel table. Both have pretzels to offer for Pekin Insurance Company. Epiline. Good morning, Judge. My name is Jake Selick. That's spelled C-I-L-E-K. I'm here with Brian Hunt as well. We're from the Hunt Law Group. We represent Tovar Snow Professionals. Okay. Well, each side is 15 minutes. We don't look at our watches. Just keep it interesting. If you would, we'd appreciate that. And so anytime you're ready, Mr. Sergelis, welcome to the Appellate Court. I'm sorry. If I may, just for the record, Jacqueline Fernandez for Defendant Epiline Anne Holland. Did we have a brief file? We're essentially adopting everything that was filed by Tovar Snow Professionals. Okay, very good. And then are you going to argue? No. Thank you. Thank you. Thank you so much. I appreciate that. Your Honors, may it please the Court, Counsel, this is a suit for declaratory judgment. Pekin issued a policy to named insured Dunleavy Concrete Incorporated, whose business description on the policy declarations are recorded as a company engaged in concrete flat work. That policy came along with an additional insured endorsement, which extends coverage when required by a written construction contract to basically any general contractors that Dunleavy does business with. In this case, Dunleavy entered into a contract to plow snow from a Kmart parking lot with Tovar Snow Professionals, who is seeking coverage under this additional insured endorsement. In this case, the underlying plaintiff slipped and fell in that parking lot due to what the allegations allege is negligent snow plowing and has sued both Tovar and Dunleavy. It's not a written construction contract, which required Dunleavy to name Tovar as an additional insured to his policy that it received from Pekin Insurance Company. The case comes to this Court after cross motions for summary judgment before Judge Quinn. No relation, by the way. I'm sorry? No relation. No relation. I said Judge Flynn. You didn't say Quinn, it's Flynn. He's also in a relation. I meant to say Judge Flynn. Is this a duty to defend or whether or not they are responsible for coverage? This is a duty to defend, Your Honor. And the issue is whether or not Tovar qualifies as an additional insured under the Pekin policy. The law generally is pretty broad on duty to defend, isn't it? It certainly is. And if the allegations of the underlying complaint do trigger the policy, then Pekin would have a duty to defend. However, in this case, the issue is whether or not Tovar actually qualifies as an additional insured to that policy. So I'm not exactly sure if the same general duty to defend principles would apply to this case. Proceed. Before getting into really the crux of this case is the endorsement. Before getting to that, I'll just note that count one of Pekin's suit for declaratory judgment involving the certificate of insurance, which Tovar has basically conceded in their brief, doesn't grant them any more coverage than the insurance policy does. So I'll skip over that and circle back to it if the Court has any questions later. The trial court here determined that the term construction in the additional insured endorsement could not limit the grant of coverage to Tovar. And the reason for that, the Court called it, basically called Section 1 of the additional insured endorsement a title and otherwise termed it as a catch line that would be used as a marketing device and that could not be used to limit the type of contract. So under the trial court's interpretation, any contract could qualify. To use a ridiculous example, for the manufacture of jelly beans would qualify as a contract that would trigger this additional insured endorsement. Well, any written contract, right? Any written contract, correct. And there's no dispute that there was a written contract for snow removal. But I don't think it's any stretch of the imagination to say that snow removal is not a contract for construction, which typically means to build, erect, et cetera. On pages 17 and 18 of our brief, I cite to a slew of cases that actually hold that principle and a Seventh Circuit case that actually says that snow removal is a non-construction activity. At the same time, there is no inside the exclusion itself nor elsewhere in the policy other than in what I would call the title. I know you don't like that phrase of the exclusion. Is the word construction used? Is that also correct? The term construction is not used. And there's no definition of construction? There's no definition. And so they argue in their brief that, well, that it's forfeited. Is there a reason it wouldn't be forfeited, Mr. Sergeles? That's their footnote 12 argument that your definition of construction should be forfeited since it was not raised in the trial court. Was it raised in the trial court? It was raised. It was raised in the trial court that snow removal does not qualify as construction. And I did cite to the same cases that I cite to in the brief of appellate basically saying that. And the fact that construction is not defined in the policy I don't believe is fatal because Illinois courts are actually instructed to give words that are undefined their natural meaning. But, again, as you know from reading the briefs and having read the record and perhaps handling this case down below, their argument is based on two Illinois cases and one Northern District case, the first one being the older case being Newdy v. John Deere Insurance written by Justice Wilson who, without citing any cases, says there is no requirement that cars sold by MK be stolen or acquired by fraud as the endorsement says any auto you have acquired is a covered auto under the false pretense coverage. And so they read out of it the title of the section, which was false pretense coverage. Again, he doesn't cite any other cases holding that. The next time this comes up is in Barth v. State Farm, an Illinois Supreme Court case, written by Justice Kilbride where he cites the idea that notably the term fraud is used only in the title and not in the text of the exclusion. Nothing in the text purports to rely on common law fraud definitions, and we are not persuaded that those definitions may be properly imposed here. The language used unambiguously conveys the contours of the exclusion, and this Court may not properly read into the language, that language, any additional terms setting couch for the well-known proposition we can't read things into policies that aren't there. They also rely on a Sperry Rail written by Judge Kennelly, which is an unpublished decision that usually shouldn't be cited, but we don't mind, even though the rules say we can't do it. We can't do it, and you shouldn't do it, because Kennelly does cite, for the first time, he actually cites something. He cites two other reported cases for the proposition that in terms of the title, the heading does not modify the coverage provided. So now we have four reported cases and one unreported case saying headings don't count. Why shouldn't we go with that? I'd like to address nudity first, because I think that that's their strongest case. Illinois courts are instructed to, when construing an insurance contract, strive to give each term in the policy meaning unless it do so would render the clause or policy inconsistent or inherently contradictory. That's an Illinois Supreme Court case, State Farm Fire and Casualty v. Mark. That's where nudity comes in. Justice Wilson specifically said that the title conflicted with provision, subparagraph 3, under false pretense coverage, and that government seizure of autos had nothing to do with false pretense coverage. So to apply the term false pretense coverage, false pretenses, forgive me, would conflict with subparagraph 3. Hence, it shouldn't apply to either subparagraph 1 or 2. And that's why he read the term out, consistent with State Farm 186-ill-second-367. Barth actually, and I'll concede in Barth, that's a true title. I don't think that what we're dealing with here is a true title. But in Barth, the title said fraud or misrepresentation. And the jury's verdict there actually found that the person who conveyed or, forgive me, that the jury found that the elements of misrepresentation were satisfied. And I believe that the destructive or there makes that case distinguishable. The Supreme Court didn't have to apply common law elements of fraud to that case. The jury already found misrepresentation. Hence, the endorsement didn't apply. The exclusion didn't apply. Sperry Rail is based on Connecticut law. Again, as Your Honor noted, it is an unreported decision. Connecticut law and the judge there actually went on to find that the endorsement was ambiguous, saying that the title to the endorsement, even if considered, did not mean that it couldn't apply to railroad cars. It was ambiguous as to whether or not cars that were being transported for a railroad company could also be transported on streets, other vanes, other than railroad tracks. But when we write this, Mr. Seragos, we have to explain where, unlike Justice Wilson, I like to explain where we get things from. Warren Durant, a long time, very smart guy, he didn't feel compelled to do that on occasion. And I'm a chicken. I like to say, here, I didn't think of this. Here's other people. I'm just following my orders from the Supreme Court and other cases. So what cases should we follow? So having distinguished or attempted to distinguish the three cases, I suggest go the other way. What do you have that goes your way? What I have that goes my way is Daniels v. Patton Corrigan, Illinois Bell Telephone Company, and People v. Warren, which if Your Honor is inclined to accept the premise that construction appears only in the title of the endorsement, those cases instruct that courts should actually consider, well, those are statutory interpretation cases. But they do say that titles should be construed in conjunction with the provisions that they precede in order to elucidate the meaning of the provisions that the title precedes. And your argument would be that why would we interpret statutes differently than we interpret policies? Well, I understand that the rules of construction are different. But I do believe that those cases are instructive, and I also understand the court's caution actually mentioned in the cases that I just cited as to placing undue emphasis on titles. But as I noted earlier, we don't believe that this is a true title because it's labeled 1. It precedes subparagraph 1A, 1B, 1C, 1D, and the term construction should apply to all of those. And unlike nudity, the term construction is not inconsistent with anything that follows Section 1. Do you have anything else, Dr. Serios? If Your Honors have no questions as to whether or not snow removal qualifies as construction or based on the certificate of insurance, no. You have plenty of time for reply. Thank you. And I should have said before we started that Justice Cunningham is our third panel member today. If he's otherwise engaged, he'll be back soon. Thank you. Thank you. Mr. Silek. Thank you, Your Honor. May it please the court, counsels. Initially, I'd like to just make the point that it is my apology for citing an unpublished opinion from the district court sitting here in Illinois. I'm not criticizing you. We tell you not to. The rules say not to. I like it. I find it very helpful. It's our rule that's wrong. Yeah, I think from our perspective, it was simply to illuminate some of the issues. That may be one man's opinion. Well, the other thing about it is generally, as long as it's not an unpublished opinion by Justice Wilson, it's likely to cite some cases that are allowed to be published, as did Connelly, which, again, he's also famous for not citing it. Having been a defendant in his courtroom for several years, I can assure you he also – anyway, move on. Go ahead. Your Honor, this dispute dates back to 2008 in November when my client Tovar Snow Professionals executed a subcontract with Dunleavy Construction for snow removal, and in that contract there was a straightforward risk transfer agreement whereby one party transferred the risk to another who was better capable of bearing the expense of ensuring that its work was performed in a reasonably safe manner. This is simply contractual language requiring Dunleavy to procure additional insured coverage for Tovar. The facts from that point forward continue to be just as straightforward. Pursuant to that contract, Dunleavy performed work that's actually a Sears rather than a Kmart, and following some of that work, Mrs. Holland, in the underlying case, sustained personal injuries and filed a lawsuit. Tovar subsequently tendered its case to Pekin, pursuant to the contractual additional insured language. Pekin subsequently denied coverage under a policy, as Mr. Saragelis pointed out, that states, quote, any written contract effective during the policy period, end quote, would trigger coverage. Clearly, this constitutes a written contract. Hypothetically, I suppose you could extend that to any written contract in the world. However, Dunleavy does perform a finite amount of services. They are a construction company who contracted for snow removal activity prior to the policy being issued by Pekin. In other words, that contract was in effect when the policy was written, so it's somewhat confusing for Pekin to assert that it wrote a policy that could extend to any written contract in the world, but not a contract that was in existence at the time the policy was written. Beyond the plain language of the policy itself, I think, as your honors have touched on, there is case law in Illinois that supports our position, and I think very clearly so. Beginning with Barth in the Supreme Court, while Pekin undertakes to draw a distinction between a, quote, that succeeds the title, that's simply a red herring that has no legal or relevant basis before the court. The Supreme Court very clearly held that it's the text of the policy that controls, and the title should not alter that text, especially in a case such as the one we had before your honors today. It shouldn't limit the coverage that's provided by that text, which is what Pekin is attempting to do today, is specifically limit the breadth of a policy endorsement that it wrote and had the opportunity itself to limit had it chosen to do so. I don't think it's a stretch to suggest that Pekin could have just simply inserted the word construction in the written construction contract in the actual body of the endorsement, and then none of us would be here today. But it did. It wrote an endorsement that applies to any written contract, and I think that's an undisputed fact, and again, that's something your honors have touched on as well. Moving on to the Newdy case, and again, that predates Barth, I think that Pekin's attempt to distinguish that case on the grounds that the title contradicts portions of the succeeding policy language is, again, irrelevant and has no legal basis. Furthermore, the Pekin endorsement at issue here does not contradict the title, does not contradict the text that follows it. It's not our position that construction contracts are not covered under the additional insured endorsement. They surely are. They're a written contract executed by Dunleavy. So Dunleavy went out and contracted for some construction activity, and that contract included an additional insured endorsement. It surely would be included under the policy, but it's just not specifically limited to construction contracts by virtue of the heading. So the title and the following text, the operative policy language, are entirely consistent with one another. It's just that the policy language is not limited by the heading. Well, in this particular case, when you try to read that title and join it with the text of the contract, it gets pretty convoluted. It's a jumble that seems to be very ambiguous. Do you agree with that? I would agree with that, that if you did incorporate that heading into the policy itself, it would become ambiguous, which is, again, something that Pekin chose not to do when it drafted the policy. And furthermore, the case law, it clearly instructs that the title is simply not policy language. I think the cases that counsel cited that he's relying on, specifically the Daniels case, within that case is the Illinois Bell case. And in that case, the court actually said that headings are, quote, mere catch lines. So aside from the fact that it's confusing as to why Pekin would rely on a case that calls titles catch lines and then subsequently represent to the court that titles are not catch lines, setting that aside, the title simply is not policy language based on Barth and Newdy. It simply is not to be incorporated into the rest of the policy language. The policy language is what it says it is, which is any written contract, and the contract at issue here falls within that language. But again, reading the title into the policy language itself is not necessarily beyond the scope of what's included in the policy language itself because it surely does apply to construction contracts as well. So the two are not mutually exclusive. Finally, I think with the Sperry Rail case, again, the court did endeavor to explicitly state that titles cannot modify language following the title, and, of course, that's the position that Tovar would adopt here. And I think that that case will serve as some persuasive authority for the court. And finally, I'd like to make the point that Pekin notes that the business description for the policy is concrete flat work. However, again, I would stress that consistent with a long line of cases from this court and the Illinois Supreme Court, it would be, if Pekin truly decided to limit coverage in a fashion that it suggests today, it would have been illogical for it not to have so expressed in the policy itself. So with that, I think I will yield the rest of my time, unless Your Honors have any more questions. Thank you very much. Thank you.  Mr. Saragos, briefly? Do you want to address a few things, Your Honors? First of all, the title to the endorsement is Contractor's Additional Insured Slash Waiver of Rights of Recovery Extension Endorsement. I don't think that the additional insured endorsement could possibly have two titles. I agree with counsel when he says that the word construction is not inconsistent with the rest of the additional insured endorsement and should be given meaning. It should not be read out of the contract. Illinois Bell, although it cautions against using headings in construing statutes, actually does utilize the heading. And I'll cite the pinpoint site for that. It's 362 Illap 3rd at 659. And although they give caution to that rule, they actually do utilize it in reaching their decision. And finally, I will ask the Court to reverse before I forget to do so. We got that from your brief, Mr. Saragos. Thank you so much, everyone, for the fine briefs, the fine arguments. This case will be taken under advisement, and this Court will be adjourned. Thank you so much.